# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JENNIFER MARINO, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br>v.<br><br>POOH-BAH ENTERPRISES, INC. d/b/a VIP'S A GENTLEMEN'S CLUB and PERRY MANDERA,<br><br>   Defendants. | CIV. A. NO. 1:16-CV-09715 |

## **PLAINTIFF'S MOTION FOR CORRECTIVE NOTICE**

Plaintiff respectfully requests that the Court issue corrective notice pursuant to Fed. R. Civ. P. 23(d) to alleviate the misleading effect of the Defendants' actions in distributing a new arbitration provision as part of its January 2017 Independent Contractor Agreement ("2017 ICA"), which materially affected the rights of dancers to participate in this case without first disclosing the existence of the case or the substance of the claims that were at stake. As noted in Plaintiff's recently filed Reply in support of Notice or Tolling (Dkt. 40), Plaintiff only just learned of the 2017 ICA for the very first time when Defendants filed their Opposition to Plaintiff's Motion on April 30, 2018. See Dkt. 36. Thus, until just a few weeks ago, Plaintiff had no idea that Defendants had promulgated a revised arbitration agreement, which purports to waive dancers' right to bring claims against Defendant Mandera in court, without first informing dancers of the existence of this case (including claims against Mr. Mandera). Plaintiff alluded to the possibility of issuing corrective notice in her Reply brief (Dkt. 40 at 9), and she recognizes that the notice that she has requested be issued pursuant to 29 U.S.C. § 216(b) could overlap in content with, and be coordinated with, the proposed corrective notice. However, because a Reply brief is not the appropriate mechanism through which to request separate relief, Plaintiff now files this motion to request explicitly that the Court issue corrective notice pursuant to Rule 23(d) in light of the Defendants' improper and misleading actions in distributing the 2017 ICA to putative class members last year.[1]

---

[1] Plaintiff recognizes that this case is currently stayed, but she respectfully requests that the Court entertain this Motion alongside her Motion for Notice or Tolling (Dkt. 30) because the events giving rise to this Motion -- namely, the distribution of the 2017 ICA in January 2017 -- have only just come to light and present a serious issue

As set forth further below, because of the potential for abuse in class and collective actions, the Court has wide latitude to regulate communications with class members, regardless of whether a class has yet been certified. A number of courts have specifically ordered that corrective notice be issued when a defendant distributes a new arbitration agreement during the pendency of a case that would affect the putative class' rights with respect to the case. See cases cited infra at 6-8.

The Court's authority is particularly broad when one of the parties has engaged in misleading communications with potential class members. Here, Defendants issued a revised Independent Contractor Agreement with an altered arbitration agreement that attempted to alter potential class members' right to participate in a pending class case without first advising them of that fact or even informing them that such a case existed. Indeed, the 2017 ICA does not mention this case -- by name or otherwise -- and it does not provide contact information for Plaintiff's counsel, or otherwise explain that signing the new agreement could affect dancers' right to participate in this case and bring claims against Mr. Mandera in court. Moreover, the 2017 ICA was clearly promulgated in direct response to Plaintiff's legal argument just a few weeks prior that Mr. Mandera was not covered by the agreement. See Dkt. 25 at 14-15 (arguing just a month earlier in December 2016 that Defendant Mandera was not covered by the agreement as currently drafted). However, rather than await a ruling from this Court, the Defendants took matters into their own hands and subverted the Court's authority to manage the class action when they drafted a new agreement and presented it to dancers without

---

that directly affects the integrity of this class action case and putative class members' rights.

first disclosing the existence of this case or explaining how the new agreement would affect dancers' right to participate in the claims that had already been brought against Mr. Mandera.

Because the Defendants' actions were misleading under the circumstances, this Court, like many others in similar situations, should order the issuance of corrective notice with respect to the 2017 ICA and also refuse to enforce the agreement with respect to dancers' claims against Mr. Mandera.

## ARGUMENT

**I. This Court Has The Power to Regulate Communications With Putative Class Members, Including By Issuing Corrective Notice, Even Before Class Certification Has Occurred**

This Court has broad power to regulate communications with putative class members with respect to both Rule 23 class actions and FLSA collective actions. See Gulf Oil Co. v. Bernard, 452 U.S. 89, 100–01 (1981) ("Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."); Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 171, 110 S. Ct. 482, 486–87, 107 L. Ed. 2d 480 (1989) (discussing the district court's duties with respect to FLSA collective actions, relying on Gulf Oil).

That a class has not yet been certified in this case makes no difference to the court's analysis. Numerous courts have found that a court's broad authority to oversee and control the course of a class action permits a court to restrain defendants from impermissibly interfering with the class action mechanism through communications with class members, even *before* a class has been certified. These courts have recognized

3

that permitting a defendant to limit its liability through *ex parte* communications with class members can defeat the very purpose of the class or collective action process. See Sjoblom v. Charter Commc'ns, LLC, 2007 WL 5314916, at *1 (W.D. Wis. Dec. 26, 2007), order clarified, 2008 WL 4510581 (W.D. Wis. Jan. 25, 2008) ("Defendants may not contact *potential* class members without seeking prior consent of this court and without fully disclosing the nature of the lawsuit and the class member's potential interest in it.") (emphasis added); see also Keystone Tobacco Co., Inc v. U.S. Tobacco Co., 238 F. Supp. 2d 151, 154 (D.D.C. 2002) (Rule 23 provides authority for court to regulate communications between a party and class members, *even before a class has been certified*); Basco v. Wal-Mart Stores, Inc., CIV.A. 00-3184, 2002 WL 272384 (E.D. La. Feb. 25, 2002) ("[W]here an alleged class action has been filed but certification has not yet been decided, a court may issue a limitation on *ex parte* contact under Rule 23, if it is clear the defendant is attempting to engage in conduct which would undermine the purposes of the rule."); Guifu Li v. A Perfect Day Fran., Inc., 270 F.R.D. 509, 518 (N.D. Cal. 2010) ("[T]he underlying rationale . . . does not depend on the certification of the class but instead on the inherent undermining of the class action process when [exclusion agreements] are solicited *ex parte.*"); Burrell v Crown Central Petroleum, Inc., 176 F.R.D. 239, 243 (E.D.Tex.1997) (same). Thus, this Court has both the authority and the duty to act in order to protect the integrity of the class action process and the rights of putative class members in this case.

## II. The Court Should Issue Corrective Notice Regarding The 2017 ICA As It Is Misleading By Omission And Purports To Affect Dancers' Legal Rights

The 2017 ICA clearly appears to be a direct response to Plaintiff's arguments in this litigation in December 2016 regarding Mr. Mandera not being covered by the

4

agreement (with which this Court ultimately agreed). See Dkt. 25 at 14-15; Dkt. 29. Rather than await a ruling on this point, the Defendants promulgated a new agreement in an attempt to subvert the Court's authority to decide whether the dancers could bring claims in court against Mr. Mandera, without informing dancers of the potential effect that the new agreement would have on their right to participate in this pending case. This action undermines the integrity of the class action and this Court's ability to effectively manage the case.

As discussed above, the Court has broad authority to regulate communications with putative class members, including through issuance of corrective notice. This is particularly true when a party's communication with putative class members is misleading or confusing. See, e.g., Piekarski v. Amedisys Illinois, LLC, 4 F. Supp. 3d 952, 955 (N.D. Ill. 2013) (where "Defendants' distribution of the [Dispute Resolution Agreement] was likely to confuse and mislead potential class members and prevent them from participating in this litigation", the Court invalidated the agreements and ordered corrective notice be issued at Defendants' expense). Here, the 2017 ICA is both misleading and purports to directly affect dancers' legal rights. Therefore, the Court should issue corrective notice with respect to the 2017 ICA.

### A. The 2017 ICA Is Misleading

The 2017 ICA is grossly misleading. With the addition of merely ten words, compare Dkt. 36-1 at 16 with id. at 23, Defendants endeavored to expand the coverage of the arbitration clause to cover Mr. Mandera while live class claims were pending against him in court, knowing full well that Plaintiff had argued that the current agreement did not cover dancers' claims against Defendant Mandera. In doing so,

5

Defendants attempted to force their workforce to sign a document that could have a direct impact on their claims without disclosing the existence of the pending case. In fact, the 2017 ICA does not make any mention of this case or the effect that signing the new agreement would have on dancers' right to participate in a wage action currently pending in court against Mr. Mandera.

When defendants mislead putative class members about the existence or character of pending litigation, courts can and do issue corrective notice. See Piekarski v. Amedisys Illinois, LLC, 4 F. Supp. 3d 952, 956 (N.D. Ill. 2013) (issuing corrective notice when defendants distributed a dispute resolution agreement that "was likely to confuse and mislead potential class members"); Goody v. Jefferson County, 2010 WL 3834025, *4 (D. Idaho Sept. 23, 2010) (ordering corrective notice to mitigate contents of misleading letter sent by Defendant); In re Currency Conversion Fee Antitrust Litig., 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005) (refusing to enforce arbitration clause entered into after litigation began when defendant "banks possessed information regarding this litigation which they withheld from their cardholders when they added the [arbitration] clause to their contracts"). Here, by attempting to alter dancers' ability to join a putative class with no mention of any pending litigation, the 2017 ICA was misleading by omission and therefore the Court should issue corrective notice.

**B. The 2017 ICA Adversely Affected Dancers' Legal Rights**

Not only is the 2017 ICA misleading by omission, but it also attempts to alter dancers' legal rights.[2] The 2017 ICA purports to expand the coverage of the arbitration

---

[2] Plaintiff maintains that the best reading of the arbitration agreement's plain language is that the 2017 ICA's inclusion of Mr. Mandera does not apply to this case. Dkt. 40 at 9–10. However, because this conclusion is not assured, corrective notice

6

agreement to include VIPs' "officers, directors, managers and affiliates." Dkt. 36-1 at 23. In doing so, Defendants endeavored to cut off dancers from the putative class with respect to the claims against Mr. Mandera. See Dkt. 36 at 7 (maintaining that dancers who signed the 2017 ICA "are excluded from this collective action"). When defendants change their arbitration agreements in a way that could alter potential class members' right to participate in a pending class case, courts have found the agreements to be abusive and misleading. Billingsley v. Citi Trends, Inc., 560 F. App'x 914, 919, 924 (11th Cir. 2014) (ordering corrective action after defendant had putative class members sign an arbitration agreement that would affect their ability to participate in pending collective action); Espinoza v. Galardi S. Enterprises, Inc., 2015 WL 9592535, at *3 (S.D. Fla. Dec. 31, 2015) (refusing to enforce arbitration agreements distributed during the pendency of an FLSA collective action); Jimenez v. Menzies Aviation Inc, No. 15-CV-02392-WHO, 2015 WL 4914727, at *6 (N.D. Cal. Aug. 17, 2015) (refusing to compel arbitration of putative class members where new arbitration policy was disseminated during the pendency of the class action and noting that "[a]t best, ….[the] new arbitration policy raises the specter of interference with the rights of … putative class members; at worst, it was a deliberate effort to undermine pending class litigation"); O'Connor v. Uber Techs., Inc., 2014 WL 1760314, at *7 (N.D. Cal. May 2, 2014) (ordering corrective notice where defendant distributed arbitration agreements which

---

should issue regardless of the applicability of the 2017 ICA to Mr. Mandera because, regardless of its effect, the 2017 ICA still injects the litigation with confusion. See, e.g., Goody v. Jefferson Cty., No. CV-09-437-E-BLW, 2010 WL 3834025, at *3 (D. Idaho Sept. 23, 2010) (issuing corrective notice when defendant's communication "confused [putative plaintiff] about whether he could join Plaintiff's action").

impacted putative class members' rights in a pending class case); Balasanyan v. Nordstrom, Inc., No. 10-CV-2671-JM-WMC, 2012 WL 760566, at *4 (S.D. Cal. Mar. 8, 2012) (refusing to compel arbitration after defendant's "improper attempt to alter the pre-existing arbitration agreement with putative class members during litigation"). Because the 2017 ICA endeavors to alter dancers' ability to join the putative class, the court should issue corrective notice.

## CONCLUSION

For all the reasons set forth herein, the Court should issue corrective notice to mitigate the effects of the abusive and misleading 2017 ICA, either separately or in conjunction with the § 216(b) notice to dancers that Plaintiff has requested regarding the dancers' claims against Defendant Mandera.

Dated: May 30, 2018

Respectfully submitted,

JENNIFER MARINO, individually and on behalf of all others similarly situated,

By her attorneys,

__/Shannon Liss-Riordan_____
Shannon Liss-Riordan, *pro hac vice*
Adelaide Pagano, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel. (617) 994-5800
Fax (617) 994-5801
sliss@llrlaw.com; apagano@llrlaw.com

8

        Marc J. Siegel
        Bradley Manewith
        Siegel & Dolan Ltd.
        150 North Wacker Drive, Suite 1100
        Chicago, IL 60606
        Tel. (312) 878-3210
        msiegel@msiegellaw.com
        bmanewith@msiegellaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2018, a true and accurate copy of the foregoing Notice of Motion was filed via this Court's CM/ECF system.

                                                         */s/ Shannon Liss-Riordan*_____

                                                        Shannon Liss-Riordan, Esq.